# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6168 | **DATE** | 3/18/2004 |
| **CASE TITLE** | Bantsolas v. Superior Air and Ground Ambulance Transport, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion to dismiss the complaint (Doc. # 22) is granted in part and denied in part. The first amended complaint is dismissed in its entirety, without prejudice, for its failure to comply with Rule 9(b). The court grants Bantsolas 30 days from the date of this order to file a second amended complaint consistent with this opinion. Defendants' motion to dismiss is otherwise denied.

(11) [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 22 2004 date docketed | 36 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| aed/lc | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAR 2 2 2004

NATHAN BANTSOLAS, INDIVIDUALLY )
AND EX REL. UNITED STATES OF )
AMERICA, and THE STATE OF )
ILLINOIS, )
)
Relator, )
) No. 01 C 6168
v. )
) HONORABLE DAVID H. COAR
SUPERIOR AIR AND GROUND )
AMBULANCE TRANSPORT, INC. AND )
DAVID HILL, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Relator Nicholas Bantsolas filed a three-count amended complaint against defendants Superior Air and Ground Ambulance Transport, Inc. and David Hill, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* (Counts I and II) and the State of Illinois Whistleblower Reward and Protection Act ("Whistleblower Act"), 740 ILCS 175/3 (Count III). Defendants' motion to dismiss is now before this court.

For the reasons set forth below, the motion is granted in part and denied in part. Specifically, Counts I, II, and III of the complaint are dismissed without prejudice for their failure to comply with the heightened pleading requirements for fraud under Fed. R. Civ. P. Rule 9(b). The court otherwise denies defendants' motion to dismiss (*i.e.*, to the extent that it is premised on the alleged unconstitutionality of the *qui tam* provisions of the FCA and the Whistleblower Act and the alleged lack of a nexus between defendants' fraudulent acts and Illinois state funds).



I.   **Background**[1]

A.   **The parties**

Relator Bantsolas is employed as a certified emergency medical technician. Defendant Superior is a medical transport company that utilizes ambulances, medicars, and service cars and operates in the State of Illinois. Defendant Hill is an owner and operator of Superior. Bantsolas worked for Superior from approximately October 1999 through June 2001.

The federal government administers Medicare through the Center for Medicare and Medicaid Services ("Center"). Within Illinois, the Center administers Medicare benefits through a private insurance carrier. Superior is a qualified Medicare "provider," meaning that it is authorized to participate in Medicare.

Medicare pays for standard medical and health care services and procedures only in the event that they are "medically necessary" (as defined by Medicare). In the context of medical transports, this standard means that Medicare pays only when other means of transportation would endanger the beneficiary's health. In the absence of such medical necessity, medical transport service is not covered by Medicare.

As a Medicare provider, Superior submits claims for payment to the private insurance carrier that administers Medicare in Illinois. The claims must include certain information, including the type of services provided, the date and price of such services, and a certification that such services were "medically necessary." Moreover, ambulance service providers like Superior are required to maintain written records documenting each transport of a Medicare beneficiary. The forms, which are to be completed at the time of transport, include the location

---

[1] The following facts are taken from Bantsolas' first amended complaint.

of the pick-up and destination, the beneficiary's physical condition, any medical services performed while the beneficiary was in the ambulance, and the reason that an ambulance transport was needed.

Bantsolas alleges, albeit obliquely, that the transports of most beneficiaries are paid under Medicare, but that the transports of hospitalized beneficiaries are paid under Medicaid. Relatedly, he also alleges that Illinois has established a Medicaid program pursuant to which it pays the medical costs of indigent citizens who have qualified to receive benefits under Medicaid. He contends that fifty percent of the funds expended by Illinois in that regard are reimbursed by the federal government.[2]

## B. Bantsolas' allegations of wrongdoing on the part of Superior and Hill

Bantsolas alleges in his amended complaint that defendants violated the FCA by submitting claims to Medicare, through its appointed private insurance carriers, that falsely represented that certain transports were "medically necessary." Bantsolas contends that Hill directed this fraudulent scheme.

As outlined by Bantsolas, Superior's scheme involved the routine transport of "standing order" patients for whom ambulance transport was not medically necessary and the concomitant submission of false claims to Medicare for those transports (*i.e.*, claims that falsely alleged medical necessity). Bantsolas contends that defendants' fraudulent conduct in this regard occurred throughout the time of his employment with Superior, from October 1999 through June 2001. During that time, he alleges that he personally and routinely transported by ambulance

---

[2] Bantsolas' allegations in this regard are confusing, and the purpose and/or meaning (if any) of his alternating references to "Medicare" v. "Medicaid" is unclear.

"patients who were ambulatory and whose condition would not otherwise qualify for reimbursement by Medicare." (First Am. Cmplt ¶ 16). Bantsolas identified two of those "standing order patients" by first name and surname initial. (Although the cumulative implication of his allegations is that Superior submitted false claims to Medicare for the transport of those two patients, as well as the other "ambulatory" patients whom he transported, Bantsolas never explicitly makes that allegation.)[3]

The first amended complaint does not contain any details regarding the transactions forming or serving the alleged scheme. Bantsolas does not identify any specific instances of the fraudulent billing. Moreover, he makes no allegations regarding the dates of the non-medically necessary transports at issue, the dates of the submissions of the corresponding false claims, any false statements made in connection with the submission of the false claims, the other contents of the false claims, *etc.* Further, Bantsolas has not provided any documents evidencing or relating to the alleged scheme.

Based on the above facts, Bantsolas alleges that defendants made false claims for payment to the federal government (Count I) and made false statements to the federal government to get their false claims approved and paid by the federal government (Count II), in violation of the FCA. Bantsolas further alleges that defendants are liable to the State of Illinois under the Whistleblower Act for the false claims for payment that they submitted on behalf of

---

[3] Bantsolas' allegations regarding Hill's involvement in the scheme are similarly vague. He contends that Hill concealed "material facts" from the government in connection with Superior's seeking and receipt of Medicare reimbursement and "promoted or allowed an atmosphere to exist at Superior wherein 'standing order' patients were improperly transported." (First Am. Cmplt ¶ 17).

Medicaid[4] patients (Count III).

II. Analysis

A. The First Amended Complaint Must Be Dismissed for Failure to Comply with Fed. R. Civ. P. Rule 9(b).

Fed. R. Civ. P. Rule 9(b) requires that, "in all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." "Particularity" means "the who, what, when, where and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The Rule's three chief purposes are: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (internal quotations and citation omitted).

Rule 9(b) applies to claims brought under the FCA. *See generally Peterson, et al. v. Community General Hosp.*, No. 01-CV-50356, 2003 U.S. Dist. LEXIS 1783 (N.D. Ill. Feb. 7, 2003); *United States ex rel. Garst v. Lockheed-Martin Corp.*, No. 98 C 5072, 2002 U.S. Dist. LEXIS 14307 (N.D. Ill. Aug. 2, 2002), *aff'd*, *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003); *United States ex rel. Obert-Hong v. Advocate Health Care*, No. 99 C 5806, 2001 U.S. Dist. LEXIS 3767 (N.D. Ill. Mar. 28, 2001); *see also United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 & n.16 (11th Cir. 2002) (collecting cases), *cert. den.*, 537 U.S. 1105, 123 S. Ct. 870 (2003). Accordingly, an FCA claimant must allege the "who, what, when, where and how" of his claims. *See, e.g., Peterson*, 2003 U.S. Dist. LEXIS 1783, at *5 (in FCA action alleging financial remuneration for Medicare

---

[4] *See* footnote 2.

referrals and false certification of Medicare claims' compliance with federal law, granting motion to dismiss for failure to plead "representative examples" listing the identity of the underlying claims, patients, and probative documents forming basis for claims); *Obert-Hong*, 2001 U.S. Dist. LEXIS 3767, at *5-8 (in FCA action alleging illegal kickbacks for referrals, granting motion to dismiss for failure to plead specific instances of fraud and details thereof, such as the identities of participants, specific dates of fraudulent claims or actions, or specific documents; complaint instead contained only "conclusory allegations" and "general methodology of a scheme"); *see also Garst*, 2002 U.S. Dist. LEXIS 14307, at *6-10 (in FCA action alleging filing of false claims for payment on contract for government agency, granting motion to dismiss for failure to plead specific false claims for payment or false statements made to obtain payment, connection of specific statements to specific false claims, identity of who made statements, to whom and when statements were made; and brief explanation of why those claims or statements were false). *Cf.*, *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 749 F. Supp. 869, 872 (N.D. Ill. 1990) (denying motion to dismiss fraud claims in civil Racketeer Influenced and Corrupt Organizations Act case; complaint "need only set forth a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants") (internal quotations and citation omitted).

Here, Bantsolas has described defendants' alleged scheme in only very general, vague terms. He has not pointed to any specific instances of the alleged fraud, let alone provided any details thereof. Although Bantsolas has partially named two individuals for whom there was a "standing order" for transport, he has not even alleged that their transports were not "medically necessary" and/or that defendants submitted claims to Medicare therefor. Bantsolas has not cited

-6-

any specific false claims, let alone alleged why or how certain claims were false (*e.g.*, what the beneficiary's medical condition was, why transport in his/her case was not medically necessary, *etc.*). Likewise, he has not identified any false statements made in support of those false claims. Moreover, Bantsolas has not made any allegations concerning where or when such transports and resulting false claims were made (beyond alleging that the scheme was underway during his slightly less than two years of employment with Superior). Finally, Bantsolas has not cited or provided any documents probative of the alleged scheme or any part thereof. As such, he has failed to satisfy the heightened pleading requirements of Rule 9(b). *See supra Peterson*, 2003 U.S. Dist. LEXIS 1783, at *5; *Obert-Hong*, 2001 U.S. Dist. LEXIS 3767, at *5-8; *Garst*, 2002 U.S. Dist. LEXIS 14307, at *6-10.

As Bantsolas correctly notes, Rule 9(b)'s particularity requirement may be relaxed "when the details are within the defendant's exclusive knowledge." *Jepson*, 34 F.3d at 1328. However, that exception is inapplicable here. The crux of Bantsolas' claims is that defendants submitted false claims to the federal government. By the terms of Bantsolas' own claims, then, the details of the false claims are *not* solely within defendants' knowledge, and relaxation of Rule 9(b)'s standards would be unwarranted. *Id.*; *see also Peterson*, 2003 U.S. Dist. LEXIS 1783, at *6 (declining to relax Rule 9(b)'s particularity requirement where "the claims at issue were submitted to the government" and thus were not within the defendants' sole possession).

In light of the nature and scope of the scheme alleged by Bantsolas (*i.e.*, a long-running scheme involving the routine filing of fraudulent claims for payment with Medicare over the course of at least approximately two years), this court would not require Bantsolas to identify and/or detail each and every fraudulent transaction undertaken as part of the scheme. Rather, the

court will embrace the sound approach adopted by courts within this district and beyond that requires the pleading of "'representative examples of the fraud which detail the specifics of who, where and when.'" *Obert-Hong*, 2001 U.S. Dist. LEXIS 3767, at \*7 (quoting *United States ex rel. Minnesota Ass'n of Nurse Anesthetists v. Allina Health Syst. Corp.*, No. 4-96-734, 1997 U.S. Dist. LEXIS 21402, at \*33 (D. Minn. Mar. 3, 1997)). *See also Peterson*, 2003 U.S. Dist. LEXIS 1783, at \*6 (requiring pleading of "representative examples").

Because of Bantsolas' failure to comport with the pleading requirements of Rule 9(b), Counts I and II are dismissed without prejudice. Moreover, although defendants have not explicitly argued that Rule 9(b) applies to Bantsolas' claim under the Whistleblower Act (Count III), the viability of that claim is clearly dependent upon the sustainability of the FCA claims set forth in Counts I and II. (Aside from alleging that the scheme upon which Counts I and II are premised also affected Illinois, Bantsolas did not allege any additional facts in support of the claim asserted in Count III.) Thus, Count III is dismissed without prejudice, as well.

The court grants Bantsolas 30 days from the date of this order to file a second amended complaint consistent with this opinion.

> **B.      The Alleged Unconstitutionality of the *Qui Tam* Provisions of the FCA and the Whistleblower Act (Under the United States and Illinois Constitutions, Respectively) Do Not Provide a Basis for Dismissing the First Amended Complaint.**

Defendants allege that the *qui tam* provisions of the FAC violate the Appointments Clause and the Take Care Clause of Article II, Sections 2 and 3 (respectively), of the United States Constitution. They also allege that the *qui tam* provisions of the Whistleblower Act violate the Illinois Constitution. On these grounds, defendants seek the dismissal of Bantsolas'

action.

Defendants' federal constitutional arguments do not persuade this court. Indeed, other courts within this circuit have already squarely rejected the precise arguments advanced by defendants in this case. *See, e.g., United States ex rel. Sharp v. Consolidated Medical Transport*, No. 96 C 6502, 2001 U.S. Dist. LEXIS 13923, at *33 (N.D. Ill. Aug. 31, 2001) (noting "great weight of authority" against constitutional challenges to *qui tam* suits and declining to dismiss *qui tam* suit on grounds of alleged constitutional impediments thereto); *United States ex rel. Chandler v. Hektoen Institute*, 35 F. Supp.2d 1078, 1081-82 (N.D. Ill. 1999) (holding that *qui tam* provisions of FCA do not violate the Take Care Clause or the Appointments Clause); *United States ex rel. Robinson v. Northrop Corp.*, 824 F. Supp. 830, 833-38 (N.D. Ill. 1993) (denying motion to dismiss and holding that *qui tam* provisions of FCA do not violate Articles II or III, or the separation of powers principle, of the U.S. Constitution). Defendants' arguments have also been rejected by courts of appeals that have had the occasion to consider them. *See, e.g., Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (holding that *qui tam* suits brought under the FCA do not violate the Appointments Clause or the Take Care Clause of Article II of the U.S. Constitution); *United States ex rel. Taxpayers Against Fraud v. General Electric*, 41 F.3d 1032, 1041 (6th Cir. 1994) (same). *See also Vermont Agency of Natural Resources v. United States ex rel., Stevens*, 529 U.S. 765, 778 n.8, 120 S. Ct. 1858 (2000) ("express[ing] no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the "Take Care" Clause of § 3"). Defendants did not cite a single case in this circuit or any other embracing the specific result they urge. The court denies defendants' motion to dismiss to the extent that it is premised on the alleged unconstitutionality of the *qui tam* provisions of the

FCA.

Defendants' contentions regarding the purported conflict between the Whistleblower Act and the Illinois Constitution are supported by citation only to a single inapposite case. The court also denies defendant's motion to dismiss to the extent that it is premised on the alleged unconstitutionality of the *qui tam* provisions of the Whistleblower Act.

C. **The Alleged Absence of a Nexus Between Defendants' Fraudulent Acts and Illinois State Funds Does Not Provide a Basis for Dismissing Count III of the First Amended Complaint.**

Noting that the Whistleblower Act creates liability for a number of acts, all of which require the making of a false representation or claim to the State of Illinois, defendants contend that Count III of the amended complaint fails to state a claim for relief. *See* 740 ILCS 175/3(a). Under Fed. R. Civ. P. 8(a), a complaint need only set forth a short and plain statement of the claim showing that the pleader is entitled to relief. *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160 (1993). In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *See Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). A complaint should be dismissed only if there is no set of facts in support of the claim that would entitle the plaintiff to relief. *See Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).

In pertinent part, the Whistleblower Act has been construed to cover false claims that bear some nexus with the State's funds or property (regardless of whether the claims are submitted to the State and/or directly or wholly paid by the State). *See People ex rel. Levenstein v. Salafsky*, 338 Ill. App. 3d 936, 943, 789 N.E.2d 844, 850 (2d Dist. 2003) (requiring a "nexus" between

-10-

false claim and State funds or property to state claim under Whistleblower Act). Defendants contend that Count III is deficient because it does not allege that defendants took any steps to defraud Illinois or that state funds were imperiled (*i.e.*, that there is an absence of the required nexus between a request or demand for payment and state funds).

The court finds that Bantsolas' allegations, while inartfully pled, are sufficient to state a claim under the Whistleblower Act. In *Klaczak and Sharp ex rel. United States and Illinois v. Consolidated Medical Transport*, No. 96 C 6502, 2002 U.S. Dist. LEXIS 16824, *14-15 (N.D. Ill. Sept. 9, 2002), the district court found the required nexus in the allegation that, "[b]y reason of the false claims presented or caused to be presented by Defendant CoMed the State of Illinois has incurred damages to be proven at trial." The court noted that, with that allegation, it was "alleged, or at least implied, that false claims were submitted to the State of Illinois which caused the State to be damaged." *Klaczak*, 2002 U.S. Dist. LEXIS 16824, at *14-15. In the present case, Bantsolas alleges: "[b]y reason of the false claims presented or caused to be presented by Defendants, the State of Illinois has incurred damages to be proven at trial." (First Am. Cmplt ¶ 31). Bantsolas thus echoes nearly verbatim the allegation that, alone, rendered the relator's claim sufficient to withstand a motion to dismiss in *Klaczak*.

Bantsolas also alleges: "The claims presented by Superior to Medicaid for services provided on behalf of Medicaid recipients for whom ambulance transport was not a medical necessity are false and fraudulent. Under the law, Defendants, and each of them, are liable to the State of Illinois for the false claims presented." (First Am Cmplt ¶ 32). As background for his claim, he has further alleged that Illinois operates a Medicaid program and that the federal government reimburses Illinois for some of its Medicaid expenditures. Finally, he has alleged

-11-

that the federal government provides reimbursement for medically necessary transports of Medicare beneficiaries who are admitted to hospitals through Medicaid.

The foregoing allegations, however inartfully pled and whatever their merits, are sufficient to state a claim for relief under the Whistleblower Act. Bantsolas has alleged a nexus between defendants' false claims and Illinois state funds.[5]

### III. Conclusion

In sum, defendants' motion to dismiss is granted in part and denied in part. The first amended complaint is dismissed in its entirety without prejudice for its failure to comply with Rule 9(b). The court grants Bantsolas 30 days from the date of this order to file a second amended complaint consistent with this opinion. Defendants' motion to dismiss is otherwise denied.

Enter:

_____
David H. Coar
United States District Judge

Dated: March 18, 2004

---

[5] Reading Bantsolas' complaint to allege a nexus between defendants' scheme and Illinois funds is also supported by one of the most basic and fundamental features of Medicare's statutory and regulatory scheme: Medicaid and Medicare are funded by both federal and state dollars. *See* 42 U.S.C. § 1396, *et seq.*; *Wisconsin Dep't of Health and Family Servs. v. Blumer*, 534 U.S. 473, 479, 122 S. Ct. 962 (2002)).

-12-